## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | § | |
| | § | |
| In re: | § | Case No.: 8:16-74455-ast |
| | § | |
| | § | |
| ANTHONY T. ROSS JR., | § | Chapter 7 |
| | § | |
| | § | |
| Debtor. | § | |
| | § | |

### BANK OF AMERICA, N.A.'S OPPOSITION TO DEBTOR'S COMPLAINT FOR VIOLATIONS OF AUTOMATIC BANKRUPTCY STAY, DAMAGES AND SANCTIONS AGAINST CREDITOR FOR WILLFUL VIOLATION PURSUANT TO SECTION 362 (A), (H)

Bank of America, N.A. files this Opposition to Debtor's Complaint for Violations of Automatic Bankruptcy Stay, Damages, and Sanctions Against Creditor for Willful Violation Pursuant to Section 362(a), (h) (the "Motion"). In the Motion, Debtor alleges that Bank of America violated the automatic stay in this bankruptcy case by virtue of a May 1, 2018 foreclosure sale conducted with respect to a property in which Debtor has an interest (the "Property"). Debtor requests that the foreclosure sale be rescinded and that Bank of America, together with its counsel, Rubin Lublin, LLC, be sanctioned for a willful violation of the automatic stay.

The Motion should be denied. Bank of America has already rescinded the foreclosure sale. And, regardless of whether the foreclosure sale was in fact a technical violation of the automatic stay, sanctions are entirely inappropriate in this case. The precise facts surrounding Debtor's interest in the Property remain unclear. At least one other entity—a Georgia corporation named NU Alliance Company—has filed a lawsuit seeking a declaration that it owns the Property. Indeed, that entity also filed a bankruptcy case shortly before the foreclosure sale,

1

filed a request for sanctions—subsequently denied by the bankruptcy court—against Bank of America and its counsel strikingly similar to Debtor's Motion pending before this Court. Debtor's relationship with NU Alliance Company is also unclear: although a dispute may now exist between Debtor and NU Alliance Company regarding ownership of the Property, one of the apparent principals of NU Alliance Company previously purported to act for Debtor with respect to this bankruptcy case.

Although the exact nature of Debtor's interest in and dealings regarding the Property are unclear, this much is not: Although Debtor filed this bankruptcy case in September 2016, until April 26, 2018—just days before the foreclosure of which Debtor complains—not one of the pleadings he filed in this case made any reference to the Property. In other words, to the extent Debtor actually possesses any interest in the property, he entirely failed to disclose it to the Court or to the chapter 7 trustee at any time prior to Bank of America's attempt to foreclose on the Property in April 2018. Debtor similarly failed to provide notice of the bankruptcy case to Bank of America until the eve of the foreclosure sale. Because Bank of America believed, based on its initial review of the case, that the bankruptcy had already concluded, it proceeded with the foreclosure sale on May 1, 2018. That decision was likely incorrect: regardless, Bank of America has corrected it by rescinding the foreclosure. All that remains is Debtor's request for sanctions against Bank of America based on the foreclosure sale. The Court should not permit a debtor who has so clearly flouted his obligations under the Bankruptcy Code to seek sanctions against his creditors for such a technical violation

## BACKGROUND

1.      On September 24, 2007, Debtor Anthony Ross and Doris Ross executed a security deed granting to Bank of America a security interest in property located at 5801 Rock Springs Road, Lithonia, Georgia (the "Mortgage," secured by the "Property"). A copy of the Mortgage

is annexed here as Exhibit A.  The Mortgage secured a Home Equity Line of Credit Account (the "Loan") established the same day, with Bank of America as the lender and Doris Ross as the borrower.  A copy of the Loan Agreement is annexed hereto as Exhibit B.

2.      The Loan has been in default for some years.  Doris Ross last made a payment to Bank of America on account of the Loan on May 28, 2015, and the Loan is currently due for June 2015.  A payment history for the Loan is annexed hereto as Exhibit C.

3.      Debtor filed this chapter 7 bankruptcy case on September 28, 2016.  Dkt. 1. Debtor did not include Bank of America among the creditors listed on the list of creditors accompanying his bankruptcy petition.  Dkt. 1, at 17.  The bankruptcy petition and all accompanying documents were signed by "LaZerrick Lawrence P.O.A. for Anthony T. Ross Jr."

4.      Debtor filed schedules on November 21, 2016.  Dkt. 14.  In Debtor's Schedule A/B, he claimed to possess an interest in three residential properties—not including the Property, which was nowhere referenced in Debtors' Schedules.[1]  Dkt. 14, at 1.  Debtor did not identify Bank of America as either a secured or an unsecured creditor.  Dkt. 14, Schedules D, E/F. Rather, the only reference Debtor made to Bank of America in his schedules was to note that he owned a Bank of America checking account containing $5,800 in cash.  Schedule A/B.  Debtor's Statement of Intention explained as to each of the properties identified on Schedule A that he intended to retain the property and enter into a reaffirmation agreement; Debtor again, however, made no reference to the Property or to any secured claim owed to Bank of America.  Dkt. 14, Official Form 108.  And Debtor's updated creditor matrix again did not include Bank of America.

---

[1] Debtor's schedules do make clear that the Property is not his principal residence.

5.      On January 12, 2017, Debtor filed updated schedules.  Again, Debtors' schedules nowhere identified Bank of America as a creditor nor described any interest that Debtor owned in the Property.  Dkts. 27, 30.

6.      On March 7, 2017, this Court entered an order granting Debtor a chapter 7 discharge.  Dkt. 32.  That same day, it appears that Debtor executed a document described as a "Quit Claim Deed Joint Tenancy with Survivorship" (the "Quitclaim Deed"), a copy of which is annexed hereto as Exhibit D.  Debtor purported, through the Quitclaim Deed, to transfer his interest in the Property to grantees NU Alliance Company and M & M Marketing Company, as well as Debtor himself, as joint tenants with right of survivorship, reciting a consideration of nineteen dollars.  Ex. D, at 1.  Debtor also retained a life estate in the Property.  Ex. D, at 2. Debtor did not disclose the Quitclaim Deed to the Court or seek approval from this Court to enter into the transaction it purported to effect.  Georgia law provides that a deed conveying land shall be recorded in the office of the clerk of the superior court of the country where the land is located.  Ga. Code Ann. § 44-2-1 (2010).  Although the Quitclaim Deed was executed on March 7, 2017, it was not recorded with the clerk of the DeKalb County Superior Court until April 24, 2018.  *See* Ex. D, at 1.[2]

---

[2] Bank of America presumes that any purported transfer of the Property pursuant to the Quitclaim Deed was void.  Pursuant to 11 U.S.C. § 362(c)(1), in a chapter 7 case, the automatic stay of acts against property of the estate "continues until such property is no longer property of the estate."  In a chapter 7 case, property of the estate does not revest in the debtor upon discharge.  Rather, the trustee is charged with "collect[ing] and reduc[ing] to money the property of the estate," *id.* § 704(a)(1), and distributing the proceeds of such property to creditors in accordance with the priorities set forth in section 726 of the Bankruptcy Code, but may, "[a]fter notice and a hearing … abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate," *id.* § 554.  It does not appear that the trustee abandoned any interest of the bankruptcy estate in the Property.  Thus, to the extent that the Debtor had any interest in the property when he filed this bankruptcy case, as of the time the Quitclaim Deed was executed, the Property remained property of the bankruptcy estate and the Debtor lacked authority to transfer it.

7.      Subsequent to the entry of a discharge, on April 28, 2017, the chapter 7 trustee filed a Notice of Discovery of Assets, indicating that payment of a dividend to creditors was possible and setting a bar date for the filing of claims.  Dkt. 35.  On January 5, 2018, the trustee filed a Report of No Distribution indicating that no property was available for distribution to creditors and that $546,060 in assets would be abandoned back to Debtor.

8.      On April 26, 2018, more than eighteen months after the filing of this chapter 7 case, and more than a year after receiving his discharge, Debtor filed updated schedules for the first time identifying Bank of America as a secured creditor.  Debtor's amended Schedule A/B details a total of $105,000 in secured debt owed to Bank of America, although those debts are described as disputed.  Dkt. 81.  Although Debtor notes that those debts are secured by the Property, he values that collateral at zero.  Dkt. 81.  Debtor also filed an amended Statement of Financial Intention indicating a desire to retain and redeem the Property.  Dkt. 82.  Debtor still has not filed an amended Schedule A/B, or any other document, indicating ownership of any interest in the Property.  Following the filing of Debtor's amended schedules, on April 30, 2018, the chapter 7 trustee filed a rescission of his previous Report of No Distribution.  Dkt. 85.

9.      On April 30, 2018, NU Alliance Company, one of the purported grantees of the Property pursuant to the Quitclaim Deed, filed a chapter 7 bankruptcy case in the U.S. Bankruptcy Court for the Middle District of Florida.  *In re NU Alliance Company*, No. 8:18-bk-03533 (Bankr. M.D. Fla.).

10.     On May 1, 2018, the Property was sold at auction pursuant to non-judicial foreclosure sale conducted in DeKalb County, Georgia (the "Foreclosure Sale"), and acquired by a third-party buyer.

11.     On May 7, 2018, Debtor filed his Notice of Complaint for Violations of Automatic Bankruptcy Stay, Damages, and Sanctions Against Creditor for Willful Violation Pursuant to Section 362 (a), (h), alleging that the Foreclosure Sale violated the automatic stay, and seeking rescission of the foreclosure and actual and punitive damages.

12.     On or around May 4, 2018, NU Alliance Company filed a Petition for Quiet Title and Possession, Declaratory Judgment for Equitable Relief, and Creditors' Willful Violations of Automatic Bankruptcy Stay in the Superior Court of Dekalb County Georgia (the "Georgia State Court Action").  *NU Alliance Company v. Bank of America, N.A.*, No. 18-cv-4891 (Ga. Sup. Ct.). Debtor is not a party to the Georgia State Court Action, which alleges that Debtor transferred the Property to NU Alliance Company and M & M Marketing Company pursuant to the Quitclaim Deed on March 7, 2017 and seeks a declaration that NU Alliance Company owns the Property. Because NU Alliance Company filed its own bankruptcy case on April 30, 2018, the Georgia State Court Action alleges that the Foreclosure Sale violated the automatic stay in the NU Alliance Company bankruptcy case.  And on May 14, 2018, NU Alliance Company filed an unsigned Complaint for Violations of Automatic Bankruptcy Stay, Damages and Sanctions Against Creditor For Willful Violation Pursuant to Section 362(a), (h),[3] with the same date as and substantially similar in content to Debtor's Motion, similarly alleging that Bank of America and its counsel violated the automatic stay in the NU Alliance Company bankruptcy case through the Foreclosure Sale.  The Bankruptcy Court for the Middle District of Florida entered an order dismissing this adversary complaint on June 12, 2018.  Order, Dkt. 11, *NU Alliance Company v.*

_____

[3] The Bankruptcy Court for the Middle District of Florida elected to treat this pleading as an adversary complaint filed against Rubin Lublin, LLC, Bank of America's counsel with respect to the Foreclosure Sale.  *NU Alliance Company v. Law Office of Rubin Lublin, LLC*, A.P. No. 8:18-ap-00241 (Bankr. M.D. Fla. May 29, 2018).

*Law Office of Rubin Lublin, LLC*, A.P. No. 8:18-ap-00241 (Bankr. M.D. Fla. June 12, 2018).  On

the same day, that court entered an order dismissing the NU Alliance Company bankruptcy case.

Order Dismissing Case, *In re NU Alliance Company*, No. 8:18-bk-03533 (Bankr. M.D. Fla. June

12, 2018).

13.    On May 14, 2018, Bank of America rescinded the foreclosure sale of the

Property.  A copy of the notice of rescission of the sale is annexed hereto as Exhibit E.

14.    On June 21, 2018, the Debtor filed a Motion to Strike Trustee Request to Rescind

Report of No Distribution.  Dkt. 88.  The chapter 7 trustee filed an opposition to that motion on

June 29, 2018, in which he confirmed that the Debtor had, at no time prior to April 26, 2018,

disclosed to the trustee that he had any ownership interest in the Property.  Dkt. 92, at 2.  The

Court has set a status conference on the trustee's notice of rescission of his Report of No

Distribution for July 24, 2018.[4]  No hearing has been set on Debtor's Motion.

## ARGUMENT

Debtor's request for sanctions for violations of the automatic stay should be denied.  As a

preliminary matter, Debtor simply lacks standing to pursue such a claim.  Debtor has already

received a chapter 7 discharge.  Dkt. 32.  Following entry of the discharge the automatic stay

ceases to protect the debtor personally.  11 U.S.C. § 362(c)(2)(C).[5]  Instead, the stay extends

only to acts to obtain possession of, exercise control over, or enforce a lien against property of

the estate.  §§ 362(a)(3)-(4), 362(c)(1).  But it is the trustee, not the debtor, who has standing to

enforce rights of the chapter 7 estate.  *See, e.g., In re Young*, 439 B.R. 211, 217–218 (Bankr. M.

D. Fla. 2010) (holding that debtor lacked standing to move for violation of automatic stay when a

---

[4] Bank of America has no objection to the chapter 7 trustee's request to rescind his report of no distribution.

[5] All statutory citations are to the Bankruptcy Code, 11 U.S.C.

bank froze accounts that were transferred to the estate); *In re Bucchino*, 439 B. R. 761, 767–768

(Bankr. D.N.M. 2010) (same). The Motion should be denied on that basis.

Even assuming Debtor has standing to pursue the claims he asserts against Bank of

America, those claims are meritless. Bank of America does not dispute that the Property

remained property of the bankruptcy estate at the time of the foreclosure sale. § 554(c) (properly

scheduled property of the estate not administered by the trustee is abandoned back to the debtor

only at the time the case is closed). As a technical matter, therefore, Bank of America's

foreclosure sale—since rescinded—likely violated the automatic stay. *See* § 362(c)(1) (stay of

acts against property of the estate continues until such property is no longer property of the

estate). Debtor's conduct with respect to the Property, and his disregard for his obligations under

the Bankruptcy Code, should preclude any attempt by Debtor to seek sanctions in this case.

At the outset of his or her bankruptcy case, a debtor is required to disclose all his assets.

§ 521(a)(1)(B). Those disclosures are critical: they permit the chapter 7 trustee to evaluate

whether any non-exempt property exists that can be liquidated for the benefit of creditors. For

that reason, "the Bankruptcy Code severely penalizes debtors who fail to disclose assets."

*Chartschlaa v. Nationwide Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (per curiam). Debtor did

not comply with the requirements of the Bankruptcy Code when he commenced this case.

Instead, he disclosed his interest in the Property to this Court over eighteen months later. As

Debtor's own Motion makes clear, Debtor provided notice of his bankruptcy to Bank of America

on the same day that he added Bank of America to his schedules—five days before the scheduled

foreclosure sale of the Property. The timing of that disclosure makes plain that Debtor attempted

purposefully to conceal the Property's existence from the Court until faced with the prospect of

foreclosure. A debtor who conceals an asset from his schedules to prejudice his creditors is

acting in bad faith. *See, e.g., In re Grogan*, 300 B.R. 804, 807–809 (Bankr. D. Utah 2003); *In re Raggie*, 389 B.R. 309, 313 (Bankr. E.D.N.Y. 2008). Under such circumstances, an award of damages to Debtor amounts to little more than a windfall. The Court should not reward Debtor's bad faith in this way.

Indeed, Debtor's conduct would likely provide a basis for the court to grant retroactive relief from stay. *See*, *e.g.*, *In re Froman*, 566 B.R. 641, 654 (S.D.N.Y. 2017). Section 362(d)(1) allows the Court to modify a stay for cause, and "cause" has been repeatedly interpreted to include bad faith acts by debtors. *See In re Kalpan Breslaw Ash LLC,* 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001) (citing *In re C–TC 9th Ave. Partnership*, 113 F.3d 1304, 1313 (2d Cir. 1997)). Should the Court retroactively lift the stay, the Debtor would have no basis for the claims he is asserting against Bank of America. Bank of America is not seeking that more sweeping relief in this case, recognizing that the trustee will likely want to ascertain whether there is equity in the Property that could be administered for the benefit of creditors. But the fact that grounds exist for such relief counsels strongly in favor of the simpler remedy of denying Debtor's Motion.[6]

Finally, even if the Court were to entertain Debtor's claims, he is unable to recover any damages from Bank of America. Section 362(k) of the Bankruptcy Code authorizes bankruptcy courts to award both actual and punitive damages for violations of the automatic stay. Punitive damages are clearly inappropriate in this case. Such damages should be awarded only "where the stay violation was conducted in bad faith, with malice, or in a particularly egregious

---

[6] Indeed, Debtor's conduct was sufficiently egregious that, had it been discovered earlier, it would have provided this Court with grounds to deny Debtor's discharge. *See, e.g., United General Title Ins. Co. v. Karnasos*, 561 B.R. 316, 330 (E.D.N.Y. 2016); *Ng v. Adler*, 518 B.R. 228, 241–242 (E.D.N.Y. 2014). And it is at least conceivable that section 727(a)(2)(B) would now authorize revocation of the discharge. *See In re Emery*, 132 F.3d 892, 895–896 (2d Cir. 1998); *In re Peterson*, 356 B.R. 468, 476 (Bankr. N.D. Iowa 2006).

manner." *In re Ebadi*, 448 B.R. 308, 320 (E.D.N.Y. 2011).  Bank of America's actions in this case in no way meet this standard.  Rather, Bank of America conducted a foreclosure sale pf property owned by debtor who had received a chapter 7 discharge, in a case—discovered by Bank of America only days before the foreclosure sale—in which the chapter trustee had previously filed a report indicating that no assets existed to be administered.  It mistakenly, but understandably, concluded that the automatic stay would not preclude a foreclosure sale in such a situation.  Upon discovery of its mistake, it promptly rescinded the foreclosure sale.  Such a good faith error does not warrant the imposition of punitive sanctions.  Moreover, Debtor has no plausible basis on which to seek actual damages.  The Motion does not identify any specific damages which Debtor claims to have suffered.  The Property is not Debtor's principal residence.  And Bank of America has already rescinded the foreclosure.  Because Debtor has not alleged any compensable harm, the Motion should be denied.

## CONCLUSION

For the foregoing reasons, Bank of America respectfully requests that this Court deny Debtor's Motion.

Dated:  July 20, 2018

Respectfully submitted

/s/ *Nancy L. Manzer*

Nancy L. Manzer
Craig Goldblatt
Jonathan Seymour
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:  202-663-6000
Email:  Nancy.Manzer@wilmerhale.com
         Craig.Goldblatt@wilmerhale.com
         Jonathan.Seymour@wilmerhale.com

*Counsel for Bank of America, N.A.*